**Ronald B. HALL et al., Plaintiffs,**

v.

**BRYCE'S MOUNTAIN RESORT, INC.,
Defendant.**

**Civ. A. No. 74–67.**

United States District Court,
W. D. Virginia,
Roanoke Division.

July 9, 1974.

Thomas J. McCarthy, Jr., Gilmer, Sadler, Ingram, Sutherland & Hutton, Pulaski, Va., for plaintiffs.

M. Langhorne Keith, Hogan & Hartson, Washington, D. C., for defendant.

## OPINION

TURK, Chief Judge.

This is a suit brought by Ronald and Linda Hall (plaintiffs) pursuant to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (the "Act") to void the purchase of a parcel of land from Bryce's Mountain Resort, Inc. (defendant). The case is now before the court on the motion of defendant to dismiss the complaint on the ground that it is barred by the two-year statute of limitations contained in the Act. The issue presented is apparently one of first impression involving construction of the Act, and the Secretary of the Department of Housing and Urban Development has submitted a memorandum of law in opposition to the defendant's motion which was adopted by plaintiffs' counsel.

Plaintiffs' complaint indicates that on July 16, 1971, defendant conveyed to plaintiffs by general warranty deed a certain parcel of land in exchange for a down payment and a purchase money note secured by a deed of trust on the land; plaintiffs later notified defendant that they considered the entire purchase transaction void by virtue of the option afforded them by 15 U.S.C. § 1703 and demanded refund of principal, interest, taxes and property owner dues paid by them;[1] defendant refused to rescind the transaction and notified plaintiffs that foreclosure proceedings would be in-

---

1. By letter dated January 23, 1974, plaintiffs were advised by defendant that at the time they purchased their lot, a Statement of Record and Property Report were not effective for the lot as required by the Act, and as a result they might have certain rights under the Act.

stituted;[2] plaintiffs then filed this suit on April 19, 1974, seeking to void the purchase and recover an amount representing the principal, interest, taxes and property owner dues expended by them, together with interest.

The option which plaintiffs are now seeking to enforce is specified in § 1703(b) of the Act:

"Any contract or agreement for the purchase or leasing of a lot in a subdivision covered by this chapter, where the property report has not been given to the purchaser in advance or at the time of his signing, shall be voidable at the option of the purchaser. * * * * "

Section 1709 governing civil liabilities for violations of the Act provides in relevant part:

"(b) Any developer or agent, who sells or leases a lot in a subdivision—

(1) in violation of section 1703 of this title, or

(2) by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot.

(c) The suit authorized under subsection (a) or (b) of this section may be to recover such damages as shall represent the difference between the amount paid for the lot and the reasonable cost of any improvements thereto, and the lesser of (1) the value thereof as of the time such suit was brought, or (2) the price at which such lot shall have been disposed of in a bona fide market transaction before suit, or (3) the price at which such lot shall have been disposed of after suit in a bona fide mar-

ket transaction but before judgment.

\* \* \* \* \* \*

(e) In no case shall the amount recoverable under this section exceed the sum of the purchase price of the lot, the reasonable cost of improvements, and reasonable court costs."

The statute of limitations relied on by defendant is contained in § 1711 of the Act:

"No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1) of this title, unless brought within two years after the violation upon which it is based. In no event shall any such action be brought by a purchaser more than three years after the sale or lease of such purchaser."

Defendant's motion is based on the above statutory sections and may be summarized as follows: Section 1703(b) gives a purchaser the right to void a contract; section 1709(b)(1) provides the power (remedy) to judicially enforce that right; section 1711 establishes a two-year period within which such right must be enforced or be barred; and since plaintiffs' complaint on its face indicates that it seeks to have declared void a contract made two years and nine months previously, it is barred by the § 1711.

The position taken by the Secretary on behalf of the plaintiffs is that the right to void a contract contained in section 1703(b) is in itself a remedy separate and distinct from the remedy of suing for damages set forth in section

2. According to the complaint, plaintiffs had ceased making payments to the defendant on October 1, 1973 because of a dispute concerning the size, location and restrictions on the lot purchased. Defendant has not proceeded with the foreclosure pending the outcome of this suit.

1709; and the two-year limitation in section 1711 does not apply to the voidability option in section 1703. In other words, although the statute of limitations in section 1711 refers specifically to section 1709(b)(1) which in turn refers specifically to section 1703, this reference has application to a remedy for damages for violation of section 1703(a) and not to the voidability option of section 1703(b).

In support of this position, the Secretary emphasizes that section 1703(b) speaks in terms of a contract being "voidable at the option of the purchaser"; whereas section 1709(c) refers to a suit for the recovery of damages and section 1711 limits an "action . . . to enforce a liability created under section 1709(b)(1)." Thus the Secretary contends that the option of voiding a contract is not subject to the time limitation of section 1711 but rather the court should adopt the applicable state statute of limitations. See Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

The Secretary also refers to section 1719 of the Act as supporting its argument. This section provides that the United States District Courts:

> ". . . shall have jurisdiction of offenses and violations under this chapter and under the rules and regulations prescribed by the Secretary pursuant thereto, and concurrent with State courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter."

The Secretary contends that this jurisdictional section provides a means for enforcing the voidability option of section 1703(b) without dependence on section 1709. Defendant argues to the contrary that this grant of jurisdiction depends on the substantive remedies including that of voiding the contract contained in section 1709.

Finally, the Secretary argues that the language of the Act is patterned after and parallels that of the Securities Act of 1933, 15 U.S.C. § 77a et seq; and that a comparison of the parallel sections of the two statutes supports his position. Thus the Secretary argues that section 1711 was patterned after section 13 of the Securities Act [15 U.S.C. § 77m] which contains a similar statute of limitations; that section 1709(b) is analogous to section 12 of the Securities Act, [15 U.S.C. § 77l], providing for damages or recission); and section 5 of the Securities Act, [15 U.S.C. § 77e], to which section 12 refers, is the basis of section 1703(a)(1). The Secretary also points out that section 11(e) of the Securities Act, 15 U.S.C. § 77k, contains language similar to section 1709 but is limited to damage remedies. From these parallel sections, the Secretary argues that since there is no analogue to section 1703(b) in section 5 of the Securities Act, Congress must have meant section 1709(b)(1), whose language is similar to section 12 of the Securities Act, to refer only to section 1703(a). The Secretary further argues that since section 1709(b) of the Act follows the wording of section 12 without including the recission option, Congress intended to limit the remedies under section 1709(b) to those available under 11(e) (i. e. damages only).

Although the Securities Act of 1933 was obviously the source of the Land Sales Full Disclosure Act, the court is unable to accept the conclusions urged by the Secretary from a comparison of the two statutes. Section 1709 is based on both sections 11(e) and 12 of the Securities Act of 1933, which sections, as noted, provide for both recission and damage remedies; and since Congress relied on both of these sections in writing section 1709, one could readily conclude that section 1709 was intended to provide both a damage and a recission remedy. The fact that section 1709(b) is analogous to section 12 of the Securities Act without specifically including the recission language from section 12 does not necessarily support the inference that the remedies under section 1709(b) were to be limited to damages.

An equally plausible explanation is simply that such additional language was not necessary in light of the unambiguous right to sue for "violation[s] of section 1703" which would seemingly include a suit for recission under section 1703(b).

■■ In fact, the court perceives the Land Sales Full Disclosure Act as being sufficiently unambiguous that reference to the Securities Act of 1933 is hardly required. Section 1703(b) provides a purchaser with the right of voiding a contract when a property report is not furnished, but the remedy for the enforcement of that right is found in section 1709. Without qualification, section 1709(b)(2) states that a developer "may be sued by the purchaser" for a violation of section 1703; and section 1711 in turn provides for a two-year statute of limitations "to enforce a liability created under section 1709(b)(1)." The use of the term "sued" in section 1709(b)(1) would clearly include suits to void the contract. In addition, the use of "may" in section 1709(c) indicates that the damage remedy specified therein was not meant to be exclusive. The fact that section 1711 speaks in terms of a "liability" created under section 1709 is consistent with the heading of section 1709, "Civil Liabilities." The statute apparently includes traditionally equitable remedies such as voiding a contract under the rubric of "Civil Liabilities" since section 1709(a) expressly permits a purchaser to sue "at law or in equity."

To accept the Secretary's interpretation section 1709 of the statute would not only require construing "may" to mean "shall" in section 1709(c) but would also require an interpretation of "in violation of section 1703 of this title" in section 1709(b)(1) to mean only section 1703(a). The result of such an interpretation would be to leave the right of voiding a contract in section 1703(b) without a remedy. The Secretary, of course, argues that section 1719 (which is styled "Jurisdiction of Offenses and Suits") may be treated as the source of the remedy for the enforcement of section 1703(b) rights, but this interpretation strikes the court as being contrary to the clear distinction in the Act between rights, remedies and jurisdiction.

Finally, the court notes that the interpretation urged by the Secretary would require imputing to Congress the intent of leaving to the courts the job of adopting and applying the various state statutes of limitation in cases in which purchasers seek to enforce section 1703(b) rights, while similar purchasers pursuing a damage remedy under the Act would be subject to a uniform nationwide limitation period. Such a result finds no support in the wording of the statute or its legislative history; nor can the court conceive of any reasons of policy supporting such a distinction. On the contrary, the Act appears to be a comprehensive, self-contained statute, the plain wording of which supports the conclusion that suits to rescind contracts pursuant to sections 1703(b) and 1709(b)(1) are subject to the two-year statute of limitations contained in section 1711.

■ Lastly, plaintiffs, by its recently filed "Plea of Waiver and Estoppel" says that even if the two-year limitation is applicable to suits to void land purchases under the Act, defendant should not be allowed to successfully plead it in this case. They assert that the defendant by the use of general dilatory tactics, and especially by its alleged delay in supplying information sought by OILSR, waived its right to rely on the limitation of actions provided in the Act. This plea is without merit. Statutes of limitations are statutes of repose and this one unquestionably was dictated by sound public policy to give stability to land titles. Mere ignorance or lack of knowledge on the part of the plaintiffs is not sufficient to suspend the operation of the statute. To suspend the statute of limitations in this case, there would of necessity have to have been some positive, affirmative action on the part of the defendant, designed to con-

ceal the existence of liability and to operate in some way upon the plaintiffs to prevent or delay the bringing of the suit. Mere silence by the defendant, absent any fraudulent acts or representations, is not such concealment as would prevent the running of the statute.

For the reasons stated, it is the judgment of the court that plaintiffs' suit to void the purchase agreement entered into with defendant on July 16, 1971 is barred by the applicable two-year statute of limitations contained in section 1711 of the Act. An order will be entered dismissing the action as barred by the two-year statute of limitations.