**Stanley J. GAUDET, Jr., Audrey C. Gaudet, Plaintiffs,**

v.

**WOODLAKE DEVELOPMENT CO., Defendant.**

Civ. A. No. 75–1217.

United States District Court, E. D. Louisiana.

Aug. 8, 1975.

Wiley G. Lastrapes, Jr., New Orleans, La., for plaintiffs.

Donald A. Meyer, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

Woodlake Development Company, the defendant in this action brought under

the Interstate Land Sales Act, 15 U.S.C. Section 1701 et seq., has moved to dismiss the action on the ground that the Interstate Land Sales Act does not apply to sales of property "solely held for sale to residents of the state in which the land is situated," or, in the alternative, to limit the plaintiffs' remedies. The plaintiffs have filed a cross-motion for summary judgment, asserting the applicability of the Act.

The defendant's motion to dismiss apparently proceeds on the assumption that the statute does not mean what it says. Because the statutory language is pellucid and evidently intentional, the defendant's motions are denied. As there exist disputed material issues of fact, the plaintiffs' motion is also denied, without prejudice to their right to reassert the motion at a later time.

The defendant, Woodlake Development Company, is a Louisiana partnership in commendam (limited partnership). Since the partnership was formed on March 27, 1973, Woodlake and its general partners have been actively involved in the subdivision of an area of land called Woodlake Estates, situated near Lake Pontchartrain. In April, 1973, the plaintiffs entered into purchase agreements for two lots. In May and October, 1974, they bought three other lots. Plaintiffs seek to rescind the transaction with respect to the three lots conveyed, and the two lots agreed to be purchased, to obtain the return of the deposit paid on the two lots with respect to which the acts of sale have not been passed, and damages with respect to the sale of a sixth lot. Some of the claims are based on the statute; others rest on alleged pendent causes of action under state law. The plaintiffs allege that they did not receive a property report prior to the consummation of any of these contracts, hence that the Interstate Land Sales Act affords them the remedy of recission.

The statute contains no exemption for sales to residents of the state where the land is located. It does not turn on the residence of the buyer or the seller, but makes it unlawful "for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails . . . (1) to sell or lease any lot *in any subdivision* unless a statement of record with respect to such lot is in effect . . . and a printed property report, meeting the requirements of section 1707 . . . is furnished." (Emphasis supplied.) 15 U.S.C. § 1703 (a). Thus, the fulcrum of the Act rests on the use of instrumentalities of transportation or communication in interstate commerce, or of the mails.

Making federal statutory regulation depend solely on the use of instrumentalities in interstate commerce or of the mails is neither new nor unfamiliar. See, e.g., the criminal statute relating to the use of such media in unlawful activity, 18 U.S.C. § 1952, and the provisions relating to the use of such channels for the sale of unregistered securities. 15 U.S.C. § 77e. Such provisions have been uniformly held constitutional. See, e.g., *Marshall v. United States,* 9 Cir. 1966, 355 F.2d 999, cert. den. 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed. 2d 54, reh. den. 385 U.S. 964, 87 S.Ct. 388, 17 L.Ed.2d 309 (18 U.S.C. § 1952); *Jones v. Securities and Exchange Commission,* 2 Cir. 1935, 79 F.2d 617, *rev'd* on other grounds, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015 (Securities Act).

The Act itself provides 10 exemptions in 15 U.S.C. § 1702, and these are amplified in the regulations, 24 C.F.R. § 1700 et seq., but nowhere is there a statutory exemption because the land is sold solely to residents of the state in which it is located. The statute does permit the Secretary to exempt any subdivision if enforcement of the statute is not necessary in the public interest and for the protection of purchasers by reason either of the small amount involved or the limited character of the public offering. Pursuant to this authority, the Secretary has set forth criteria in

24 C.F.R. § 1710.14, and a procedure to apply for exemption. But while the defendants have applied for this exemption, they do not claim that they have been granted it.

The deposition of the defendant's managing partner indicates that both the mails and telephone were used to promote the development. This is at least sufficient to preclude either dismissal of the action or summary judgment.

■ The defendant advances the alternative notion that § 1703(b) applies only to executory agreements to sell and not to executed sales because it refers to "any contract or agreement for the purchase . . . of a lot" and not to acts of sale or deeds. If that were so, the Act would have little scope, because it would apply only to the interim period between the execution of an agreement to purchase and the consummation of the sale. In addition, where there was no preliminary agreement, but only the immediate execution of an act of sale (or deed), the Act would have no application. To read § 1703(b) so restrictively would abridge the scope of § 1703(a), which provides, "It shall be unlawful . . . *to sell or lease any lot* . . .." (Emphasis supplied.)

The defendant's thesis is neither a fair reading of the statute itself, nor an accurate reflection of its intention. The Act refers to *"any* contract or agreement for the purchase or leasing of a lot in a subdivision." (Emphasis supplied). Obviously this embracive language is intended to reach not only executory agreements but executed ones. The period for revocation is until "midnight of the third business day following the consummation of the transaction." This obviously refers to three days after the execution of the act of sale or deed, which is the consummation of the land transaction.

No solace can be found in the thesis that "the integrity of transactions affecting real estate" is disturbed by the statute. We are not dealing with questions of validity of record title, but with the relationship of the parties to the agreement. Louisiana has, itself, long had provisions to permit the recission of sales of immovable property. See, for example, La.Civ.Code arts. 2589–2600, relating to recission for lesion beyond moiety. We need not decide whether § 1703(b) would permit recission to the detriment of third parties; it is clear the remedy is available under the present circumstances.

The defendant also claims that "all materials, documents, letters, contracts, purchase agreements and contracts of sale delivered to Stanley J. Gaudet, Jr. were done so in such manner as would qualify as the property reports and other documents required by the Interstate Land Sales Act . . . ." The Act, however, does not merely require the furnishing of certain information; it requires that the seller have in effect a "statement of record" and furnish a "property report," specific documents the requirements of which are set forth in the Act and in the regulations promulgated by the Secretary. 15 U.S.C. §§ 1706, 1707; 24 C.F.R. §§ 1710.105, 1710.110.

■ The analysis set forth above would indicate that the plaintiffs' motion for partial summary judgment is well-founded. Their motion must be denied, however; the defendant's affidavit establishes a dispute as to a material fact, i.e., whether the mails or instrumentalities in interstate commerce were used, directly or indirectly, to effect the sales in question. Therefore the court is constrained to deny the plaintiffs' motion at this time. If the facts on this issue are clarified by further discovery, the motion may be renewed.