Stanley J. GAUDET, Jr., and Audrey C. Gaudet

v.

**WOODLAKE DEVELOPMENT CO.**

Civ. A. No. 75–1217.

United States District Court,
E. D. Louisiana.

March 5, 1976.

Wiley G. Lastrapes, Jr., G. Phillip Shuler, III, New Orleans, La., for plaintiffs.

Donald A. Meyer, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

The plaintiffs purchased real estate from the defendant in a transaction subject to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. The transaction took place in two stages. First, the parties entered into an agreement to buy and sell. Such an executory contract is customary in Louisiana. Later, title to the property was conveyed in separate instruments, called acts of sale in Louisiana. These are analogous to a warranty deed at common law.[1] The defendant did not at any time provide plaintiffs with a property report as required by § 1703(a)(1) of the Act. The plaintiffs seek to rescind their purchases of three lots that are unimproved. They contended at the outset of the suit that they are entitled to damages with respect to a fourth lot where they had constructed their home, or alternatively to rescission of that transaction as well. Now they express a preference for rescission and seek to amend their complaint accordingly. The defendant was not surprised by this development because it had assumed all along that this was plaintiffs' preference.

The defendant contends that the statute of limitations contained in the I.L.S.F.D.

---

1. Prior to the trial of this action, the defendant moved to dismiss this action based upon its contention that the Act did not permit rescission of the completed sales. The Court denied the motion. See *Gaudet v. Woodlake Development Company,* E.D.La.1975, 399 F.Supp. 1005.

Act started to run when the purchase agreement was signed and that the action was not timely because it was not commenced within two years of the signing of the purchase agreements.

## I.

Plaintiffs signed the agreement to purchase on April 18, 1973. The defendant's representative was not present at the time. He signed it later, and his signature is dated April 19, 1973. The executed purchase agreements were mailed to plaintiffs and received by them on or about April 23, 1973. Plaintiffs commenced this action on April 22, 1975.

The acts of sale of the lots were executed at different times, the first on May 8, 1974, and the last two on October 21, 1974.[2]

While the statute was not drafted with Louisiana practice in mind, its principles appear easy to apply. If a property report is not furnished, the execution of an agreement to sell is a violation of the Act. It gives rise to a cause of action to rescind the agreement. The statute of limitations for this action begins to run when the agreement is completed. But the purchaser may decide not to bring this action. Indeed he might later be furnished with a property report and elect not to do so.

The execution of a deed, or an act of sale translative of title, is itself a violation of the act if no property report has been furnished. This violation gives rise to a cause of action under section 1709. Thus, the failure to furnish a report is not a continuing violation of the statute, but the statute may be violated on two occasions by two distinct acts, each of which is a discrete statutory violation. Of course the statute does not recite this primer of remedies. But its pattern is not obscure. Let us spell out how the statute requires this interpretation:

First, as was pointed out in the earlier opinion in this case,[3] section 1703(b) provides, "*Any* contract or agreement . . . covered by this chapter . . . shall be voidable at the option of the purchaser" (emphasis supplied) when the property report has not been received prior to the signing of the agreement. The statute does not imply that there may be only one violation per lot. Section 1703 provides for revocation "until midnight of the third business day following the *consummation* of the transaction, where he has received the property report less than forty-eight hours before he signed the contract or agreement . . . ." This sentence not only extends the purchaser's right to rescind to one situation where he has in fact received the report before the transaction (e. g., where he has received it less than 48 hours before the sale); it further indicates by use of the word "consummation" that Congress intended to allow the purchaser to rescind completed sales. The Act neither states nor implies that a purchaser who has not elected to rescind his initial agreement waives his right to relief with respect to the later contract.

Section 1703(a)(1) requires that the property report be "furnished to the purchaser in advance of the signing of *any* contract or agreement *for sale* . . . by the purchaser" (emphasis supplied). An "act of sale" is certainly a contract "for sale." Had the defendant provided a property report to plaintiffs prior to the signing of the purchase agreements, it would have complied with the statute with respect to whatever came thereafter, the acts of sale as well as the executory agreements, because it would have thereby furnished the property report "in advance of the signing."

Or, to put another case, if the defendant had not furnished a property report before execution of the purchase agree-

---

**2.** It is likely that at the time the acts of sale were executed the purchase agreements had lapsed because the agreements required the acts of sale to be executed on or prior to thirty (30) days after acceptance of the streets, and the sales were, in local jargon, "passed," (i. e. executed) at a later time. But that fact does not appear to be controlling. No property report was furnished at either time.

**3.** See footnote 1, supra.

ments, but had furnished one before the signing of the acts of sale, no action to rescind the acts of sale would lie under section 1703(b). The defendant would thereby have cured the prior violation. See *Bissette v. Colonial Mortgage Corp. of D. C.,* 1974, 155 U.S.App.D.C. 360, 477 F.2d 1245, for a similar holding under the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.). The buyer of property certainly would not have an action to void a purchase agreement when he had no action to void the sale itself.

Nothing in this interpretation of the Act is inconsistent with Judge Smith's decision in *J. B. Hester v. Hidden Valley Lakes, Inc.,* N.D.Miss.1975, 404 F.Supp. 580, and now pending on appeal, Fifth Circuit Docket No. 76–1031. That case involved three groups of designated plaintiffs, each of whom entered into a separate transaction:

(1) On August 7, 1970, the Baileys agreed to purchase by executing a conditional sales contract. After they had made ten payments, a warranty deed was delivered to them.

(2) On September 20, 1970, the Ronzas agreed to purchase by executing a conditional sales contract. No warranty deed had been delivered when suit was filed.

(3) On April 30, 1971, and on April 9, 1972, the Hesters agreed to purchase by executing two conditional sales contracts. No warranty deed of the property covered by either contract had been delivered when suit was filed.

In connection with the *Bailey* and *Ronza* transactions, the court held that the three year "umbrella" limitation of section 1711 applied.[4]

Some of the Hesters' claims related to untrue reports or reports containing omis-sions, as set forth in Sections 1709(a) and (b)(2). Section 1711 sets forth a statutory limitation of "one year after the discovery of the untrue statement or the omission. . . ." The court held that the Hesters could maintain this claim as, "they have complied with the one-year statute of limitation. . . ."

In connection with the Hesters' claim for rescission brought under section 1709(b)(1), which imposes liability upon a developer selling subdivision lots where no property report has been furnished, the court held the action time barred because it was not brought "within two years after the violation upon which it [was] based," saying:

The court is of the opinion that this language, in the context of a suit for rescission because of the developer's failure to furnish a property report at or before the time of sale, refers to the date of contract or agreement to purchase. Since *all* of the *purchases* by the named plaintiffs, the Hesters included, predate April 24, 1972 (two years prior to the date of the filing of the complaint), the plaintiffs' claims under 15 U.S.C. § 1703 are barred by the two-year statute of limitations." (Emphasis supplied.)

As to the Hesters, there was no warranty deed to rescind; the rescission could have been granted only with respect to the contract that had been signed, the agreement to purchase. Apparently a warranty deed had been delivered only to the Baileys, and this deed antedated the action by two years.

## II.

■ We now consider the matter of remedy. The plaintiffs sought rescission in the alternative from the start of the suit. The defendant was aware that this was their primary desire although the court was not. The amendment would merely ask the court

---

4. 15 U.S.C. § 1711 provides:

No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1) of this title, unless brought within two years after the violation upon which it is based. In no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser.

to recognize what the parties knew throughout.

Accordingly, the plaintiffs contend no amendment is necessary. Nonetheless, if that were not enough, plaintiffs made an oral motion to amend the complaint to request rescission on Lot 28, Square "A" at the trial. Rule 15, FRCP provides ample authority for this amendment, and it is granted.

### III.

But the right to amend to claim a remedy does not mean the remedy may or should be granted. As pointed out both in this opinion and in the earlier opinion in this case, rescission is a proper remedy. Furthermore, § 1709(c) clearly provides that damages are available in an action based on a violation of § 1703. Whether these remedies may be cumulated, i. e., whether the purchaser may both rescind the sale and claim the damages specified in § 1709(c), is, however, another question.

Section 1709(e) provides:

In no case shall the amount recoverable under this section exceed the sum of the purchase price of the lot, the reasonable cost of improvements, and reasonable court costs.

This does not imply that the plaintiff should be able to cumulate remedies until he reaches this maximum amount. Congress did set a maximum recovery, but this does not indicate that the maximum amount should be allowed.

Reference to the Securities Act, the conceptual ancestor of the ILSFDA, is not helpful. The value of securities is not enhanced by "improvements." Nor does the legislative history provide guidance. There is no mention of cumulation of the remedies.

In the absence of any authority, then, it seems that the better view is that the purchaser may have either of two remedies, but not both. He may sue to rescind the sale, and simply recover the purchase price paid; or he may seek the damages set forth in § 1709(c).

If counsel for the plaintiffs desires to cite further authority bearing on this problem, he may do so by filing an appropriate motion to reconsider.

Accordingly, the Clerk is directed to enter judgment in favor of the plaintiffs and against the defendant rescinding the sales of Lots 6 and 7, Square N and Lots 27, 29 and 30 of Square A. The matter is referred to the Magistrate to act as Special Master to determine damages incurred in connection with Lot 28, Square A, in accordance with 15 U.S.C. § 1709(c).