Theodore FOGEL and Ruth
Fogel, Plaintiffs,

v.

SELLAMERICA, LTD., Pocono Pleasant
Valley Lake Estates, Inc., Pocono Inter-
national Corporation, Resort Properties,
Inc., Rick Ebenstein, Charles Goldberg,
Ebeco Associates, Inc. and Nicholas Ko-
tovos, Defendants.

No. 75 Civ. 6487.

United States District Court,
S. D. New York.

Feb. 17, 1978.

Turchin & Topper, New York City, for plaintiffs.

Bernard Novick, New York City, for defendants Sellamerica, Ltd., Pocono Intl. Corp., Resort Properties, Inc., Ebenstein, Goldberg and Ebeco Assoc., for defendants.

## OPINION

GAGLIARDI, District Judge.

This action arises out of defendants' allegedly fraudulent sale to plaintiffs of a parcel of real property consisting of two lots in a subdivided residential development located in eastern Pennsylvania. Plaintiffs Theodore and Ruth Fogel have sued various sales agents and developers of the property alleging violations of the Interstate Land Sales Full Disclosure Act of 1968 ("Land Sales Act"), 15 U.S.C. §§ 1701–1720; § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and common law fraud. Jurisdiction is based on § 1420 of the Land Sales Act, 15 U.S.C. § 1719, § 27 of the Exchange Act, 15 U.S.C. § 78aa, and diversity of citizenship, 28 U.S.C. § 1332.

Presently before the court is defendants'[1] motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., dismissing the complaint on the grounds that the Land Sales Act cause of action is barred by the

---

1. All defendants have joined in this motion except Pocono Pleasant Valley Lake Estates, Inc., alleged to be the current developer of the property, and Nicholas Kotovos, alleged to have made misleading statements to the plaintiffs and to have participated in other violations.

statute of limitations, that the real estate interests involved do not constitute a "security" within the meaning of the Exchange Act, and that certain defendants were not involved with the sale to plaintiffs. For the reasons which follow, the motion is granted in part and denied in part.

### Facts

Plaintiffs, residents of New York State,[2] allege that on February 25, 1973 [3] they purchased approximately three acres of real property from the defendants in Penn Forest Township, Carbon County, Pennsylvania, in a development known as Pocono Forest Lake ("the property") for a total deferred payment price of $23,709. The moving defendants, see footnote 1, *supra,* are the corporations which were the original developers and sellers of the property, or their agents, as well as the individuals who are the officers and sole shareholders of the original developers.[4] All of these defendants are alleged to have made various inaccurate, misleading or fraudulent representations to the plaintiffs in order to induce them to enter into the real estate transaction which is the subject of the complaint. These misrepresentations form the basis of the statutory and common law violations alleged.

In particular, the defendants are charged with knowingly issuing an offering statement and making other representations to the plaintiffs which were false and misleading in that they described the property which was offered for sale as being wooded, levelled and graded for roads and without need of special drainage facilities, when in fact the property is under water, without adequate roads and is unreachable by car. Plaintiffs further allege that defendants represented that they would construct swimming and other recreational facilities and provide paved roads and bus service; that below ground waste disposal systems were practical and economically feasible; and that the property was a good investment because it could readily be resold at a profit. These representations were knowingly false and misleading, plaintiffs allege, in that the property is still without recreational or community developments, is unsuited for below ground waste disposal due to its submerged condition, and is "virtually worthless" and "impossible to resell." Plaintiffs claim that they relied on these various representations and purchased the property at excessive and artificially inflated prices.

### Interstate Land Sales Act

Plaintiffs allege two causes of action under the Interstate Land Sales Full Disclosure Act. In brief, the Land Sales Act was enacted for the protection of purchasers in interstate land sales, and establishes federal anti-fraud provisions as well as registration and disclosure requirements for developers involved in nonexempt land transactions.[5] Such developers must file a "statement of record" with the Secretary of Housing and Urban Development ("HUD"). This document must set out certain factual informa-

**2.** Although the question of diversity jurisdiction is not presently in issue, this court notes that plaintiffs have alleged only that they are residents of New York without pleading their citizenship.

**3.** It is agreed that February 25, 1973 is the correct date upon which plaintiffs entered into the purchase agreement, and that the allegation in Paragraph 3 of the complaint, that the date was February 25, 1975 [sic], is a typographical error.

**4.** Defendants Pocono International Corp. and Charles Goldberg were indicted and found guilty of mail fraud, 18 U.S.C. § 1341 and violations of the Land Sales Act, arising out of sales of lots in Carbon County, Pennsylvania,

after a jury trial in the United States District Court for the Southern District of New York. On appeal the convictions were affirmed. *United States v. Goldberg,* 527 F.2d 165 (2d Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976).

**5.** The Land Sales Act, exempts certain real estate transactions including, for example, sales which are "not pursuant to a common promotional plan to offer or sell fifty or more lots in a subdivision." 15 U.S.C. § 1702(a)(1). Defendants do not contend that the transaction here in issue is exempt from the Act's coverage.

tion deemed necessary for the protection of potential buyers, such as details regarding the identity and financing of the developer and anyone having an interest in the land, and the condition of the title to the property. §§ 1704, 1705.[6] The statement of record becomes effective subject to HUD's review, and is made available for public inspection. § 1706. In addition, developers must prepare and deliver to each purchaser a "property report" containing such information as HUD determines to be "in the public interest or for the protection of purchasers." § 1707. In its disclosure provisions the Act provides that a nonexempt land sale is lawful only if a statement of record is in effect and the purchaser has received a property report before signing any contract. § 1703(a)(1), (b). It further

proscribes fraud and material misrepresentations in the sale, lease or offer to sell or lease of nonexempt property. § 1703(a)(2).[7]

In addition, the Land Sales Act expressly establishes a civil cause of action maintainable in federal or state court, § 1719, on behalf of purchasers against developers and their agents who fail to comply with its requirements. § 1709. Pursuant to § 1709(a) and (b)(2), the developer may be sued if the effective statement of record, or the property report furnished to the purchasers, contained a material omission or untrue statement. Section 1709(b)(1) provides a cause of action for any violation of the terms of § 1703.[8]

Defendants' motion to dismiss the claims alleged under the Land Sales Act is based

6. Unless otherwise indicated, statutory section references are to Title 15 of the United States Code (1970). On August 22, 1974 relatively minor changes in the statute, not material here, were effected with the passage of Public Law 93–383, 88 Stat. 736.

7. 15 U.S.C. § 1703, entitled "Prohibitions relating to sale or lease of lots in subdivisions; voidability of contracts or agreements," provided (see footnote 6), in pertinent part:

(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—

(1) to sell or lease any lot in any subdivision unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title and a printed property report, meeting the requirements of section 1707 of this title, is furnished to the purchaser in advance of the signing of any contract or agreement for sale or lease by the purchaser; and

(2) in selling or leasing, or offering to sell or lease, any lot in a subdivision—

(A) to employ any device, scheme, or artifice to defraud, or

(B) to obtain money or property by means of a material misrepresentation with respect to any information included in the statement of record or the property report or with respect to any other information pertinent to the lot or the subdivision and upon which the purchaser relies, or

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser.

(b) Any contract or agreement for the purchase or leasing of a lot in a subdivision

covered by this chapter, where the property report has not been given to the purchaser in advance or at the time of his signing, shall be voidable at the option of the purchaser. A purchaser may revoke such contract or agreement within forty-eight hours, where he has received the property report less than forty-eight hours before he signed the contract or agreement . . . .

8. 15 U.S.C. § 1709, entitled "Civil liabilities," provides in pertinent part:

(a) Suit for untrue statement or omission to state material fact in statement of record.

Where any part of the statement of record, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, any person acquiring a lot in the subdivision covered by such statement of record from the developer or his agent during such period the statement remained uncorrected (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue the developer.

(b) Suit for sale or lease in violation of section 1703 of this title or by means of property report containing untrue statement or omission to state material fact.

Any developer or agent, who sells or leases a lot in a subdivision—

(1) in violation of section 1703 of this title, or

(2) by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot.

on 15 U.S.C. § 1711, the Act's statute of limitations, which provides as follows:

No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1) of this title, unless brought within two years after the violation upon which it is based. In no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser.

Plaintiffs filed their complaint on December 30, 1975, having purchased the property on or about February 25, 1973, and defendants concede that the action has been brought within the three year maximum limitation period contained in the final sentence of § 1711. They argue, however, that all of plaintiffs' claims under the Land Sales Act are barred by either the one or two year limitations in that section. In order to rule on this contention, it is necessary to identify each of the specific statutory violations contained within the general allegations presented by plaintiffs. Based on this section-by-section analysis, the appropriate limitation period under § 1711 and its applicability to each particular violation alleged can then be determined.

Plaintiffs' second cause of action alleges simply that "defendants' conduct violated the provisions of the Interstate Land Sales Act, 15 U.S.C. § 1703(a)," and does not specify which provisions of § 1703(a) are involved. Since all violations of § 1703 are made actionable by § 1709(b)(1), and under § 1711 any claim alleging a violation of § 1709(b)(1) must be "brought within two years after the violation upon which it is based," this court must determine what specific "violations" of § 1703(a) have been charged, and when they occurred.

### § 1709(b)(1)—§ 1703(a)(2)(B)

■ Plaintiffs' allegation includes, at a minimum, the claim that defendants obtained money from them by means of a material misrepresentation with respect to information pertinent to the property sold, a violation of § 1703(a)(2)(B). For such a violation, the two-year statute of limitation runs not from the date of the execution of the contract to purchase, but from the most recent payment of money by the defrauded purchaser. As observed in *Bongratz v. WL Belvidere, Inc.,* 416 F.Supp. 27, 29 (N.D.Ill. 1976),

"the [Land Sales Act] could not state more clearly that the period [of limitation] begins to run on the date of the violation and that the violation [under 15 U.S.C. § 1703(a)(2)(B)] is the receipt of money or property. Indeed, had Congress intended that the period begin to run on the date of the sale, it undoubtedly would have so provided, since it did provide that in no event shall an action be brought more than three years from the date of sale."

■ The uncontradicted affidavit of plaintiff Theodore Fogel submitted in opposition to this summary judgment motion (the "affidavit") establishes that plaintiffs made an initial cash down payment and have been making continuous monthly payments up to the filing of the affidavit. If plaintiffs' allegations are true, these payments constitute a series of fresh violations of § 1703(a)(2)(B), and are therefore not barred by the two year statute of limitations applicable to § 1709(b)(1). *Bongratz v. WL Belvidere, Inc., supra; Husted v. Amrep Corp.,* 429 F.Supp. 298, 307–08 (S.D. N.Y.1977); *see Happy Investment Group v. Lakeworld Properties, Inc.,* 396 F.Supp. 175, 188 (N.D.Cal.1975); *but cf. Davis v. Rio Rancho Estates, Inc.,* 401 F.Supp. 1045, 1048–49 (S.D.N.Y.1975) (complaint failed to state a claim under Land Sales Act where execution of installment contract preceded effective date of the Act).

### § 1709(b)(1)—§ 1703(a)(2)(A) and (C)

■ Further, in considering a transaction such as the one before this court, where "the seller retains a substantial incentive to

induce continued payments, it is reasonable to apply the same construction to the general anti-fraud prohibitions of §§ 1703(a)(2)(A) and (C), at least where the defendants are accused of specific, additional wrongdoing after the contract is signed." *Husted v. Amrep Corp., supra,* 429 F.Supp. at 308. Such additional wrongdoing is charged in the instant action. Plaintiffs contend that at least one defendant, Kotovos, actively encouraged them to retain their investment despite their misgivings as late as the summer of 1974, well within two years of the institution of this suit. It is claimed further that when plaintiffs informed the selling defendants that they were purchasing the property for investment purposes only and intended not to visit or develop the site themselves, defendants urged them not to concern themselves with its condition but simply to do nothing more than hold, and continue to pay for, the property for at least five years. Given these circumstances, defendants' motion for summary judgment dismissing the second cause of action insofar as it alleges violations of § 1703(a)(2) must be denied. *Cf. Timmreck v. Munn,* 433 F.Supp. 396, 408–09 (N.D.Ill.1977); *Husted v. Amrep Corp., supra,* 429 F.Supp. at 306–07 (discussing tolling of statute of limitations).

### *§ 1709(b)(1)—§ 1703(a)(1)*

However, defendants' motion must be granted, and the complaint dismissed, insofar as plaintiffs allege a violation of § 1703(a)(1), which makes it unlawful "to sell" property unless a statement of record is in effect *and* a property report is furnished to the buyer "in advance of the signing of any contract or agreement for sale." *Id.* This court will consider each of these requirements in turn.

■ The express terms of the statute make clear that failure to furnish the purchaser with a property report is a violation of § 1703(a)(1) which occurs at "the signing of the contract or agreement for sale." Consequently, it is at that time that the statute of limitations commences. *Bongratz v. WL Belvidere, Inc., supra,* 416

F.Supp. at 29; *cf. Hester v. Hidden Valley Lakes, Inc.,* 404 F.Supp. 580, 584 (N.D.Miss. 1975) (*accord* in action to rescind under § 1703(b) for failure to provide property report); *Jacobsen v. Woodmoor Corp.,* 400 F.Supp. 1 (W.D.Mo.1975) (*accord*); *Hall v. Bryce's Mountain Resort, Inc.,* 379 F.Supp. 165 (W.D.Va.1974) (*accord*); *Gaudet v. Woodlake Development Co.,* 413 F.Supp. 486 (E.D.La.1976) (§ 1703(b) action held timely where, under Louisiana practice, executory sale took place in two stages and second act of signing was within statute of limitations).

■ In the instant case, the act of signing the sale agreement concededly occurred more than two years prior to the institution of this action. Plaintiffs' § 1703(a)(1) claim based on defendants' alleged failure to provide the required property report "at the signing" is thus time-barred and must be dismissed. *Bongratz v. WL Belvidere, Inc., supra.*

Similarly, plaintiffs' § 1703(a)(1) claim premised on defendants' alleged failure to have a statement of record in effect and on file with HUD must be dismissed. The statutory language makes clear that the unlawful activity under § 1703(a)(1) is simply "to sell or lease" property unless the disclosure requirements are met. *Bongratz v. WL Belvidere, Inc., supra,* 416 F.Supp. at 29. A violation of the requirement that a statement of record be in effect thus can occur only at the "sale" and, although the statute is not as explicit as to the requirement of a statement of record as it is with respect to the timing of the seller's obligation to provide a property report, the activity which constitutes the "sale", and commences the statute of limitations, must be the initial signing of the contract rather than the final payment of the purchase price.

This conclusion is supported by the fact that the pertinent administrative rule defines "sale" to mean "any obligation or arrangement for consideration to purchase or lease a lot directly or indirectly," 24 C.F.R. § 1710.1(n) (1977), thus emphasizing the existence of the legal obligation rather

than the fact or timing of payment. *Cf.* 15 U.S.C. § 1703(a)(2)(B), discussed *supra,* which makes it unlawful to "obtain money" through material misrepresentation.

The statutory scheme lends further support to this construction. The association in § 1703(a)(1) of the requirement that a statement of record be in effect with the explicit and unequivocal requirement that a property report be furnished at or before "the signing of the contract" indicates that both of these disclosure provisions are designed to ensure a purchaser's access to the requisite material information before he signs a contract and commits himself to the transaction. Consequently, any violation of § 1703(a)(1) must occur at the signing of the agreement, in contrast to the various violations of the anti-fraud terms of § 1703(a)(2), discussed *supra,* which involve continuous or ongoing misconduct extending beyond the initial contractual act of agreement.

■ Accordingly, this court concludes that a violation of the § 1703(a)(1) requirement that a statement of record must be in effect occurs, and the two year statute of limitation commences, when the purchaser first signs the contract or agreement of purchase and thereby legally binds himself to the sale arrangement and assumes the obligations of a purchaser. *See Husted v. Amrep Corp., supra,* 429 F.Supp. at 307 (assuming without holding that "sale" under § 1703(a)(1) occurs when buyer signs contract); *Davis v. Rio Rancho Estates, Inc., supra,* 401 F.Supp. at 1048 (citing the "venerable rule of equity jurisprudence that upon execution of a contract for the sale of real property equitable title vests immediately in the purchaser, and the seller retains legal title only, as security for the remainder of the purchase price." *Id.*); *Lukenas v. Bryce's Mountain Resort Inc.,* 538 F.2d 594, 596–97 (4th Cir. 1976) (distinguishing between failure to file and filing of fraudulent statement). Since plaintiffs signed their purchase agreement more than two years before commencing this action, this claim must be dismissed as time-barred.

Plaintiffs' third cause of action essentially alleges that defendants either failed to file with the United States Government the statements required by the Act, or filed such statements with materially misleading and inadequate representations.

■ Sale of nonexempt land without a statement of record in effect with HUD or a property report furnished to the purchaser, required by 15 U.S.C. §§ 1704–1707, constitutes a violation of § 1703(a)(1). For the reasons discussed *supra,* suit based on any violations of this subsection is time-barred.

### § 1709(a) and (b)(2)

■ However, to the extent that this cause of action charges material omissions and false statements in the statement of record or property report, it alleges causes of action under § 1709(a) and (b)(2), which must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." § 1711. The uncontradicted affidavit of Theodore Fogel asserts that once he had signed the "agreement of purchase" on February 25, 1973, he never again visited the property until two and a half years later. He asserts that he purchased the unimproved land for investment purposes only, and that he did so upon the representation by defendants that the extensive improvements which they would make would result in a profitable resale in five years. Because he intended neither to make improvements himself nor to establish his own residence on the property, he claims, he had no reason to and in fact did not again view the site of the property until the summer of 1975, after he had received a letter from HUD, dated May 9, 1975, alerting him to possible violations of the Land Sales Act. It was only then, he contends, that he observed that the property's natural condition was not as had been represented and that the improvements which had been promised, and upon which he had relied in purchasing the property, had never been effected.

■ These assertions by plaintiff plainly raise material issues of fact which preclude the granting of defendants' motions for summary judgment. If proven, plaintiffs' assertion would establish that he did not discover the unlawful untrue statements or omissions until the summer of 1975, well within one year of the institution of this action and thus timely under § 1711. *Hester v. Hidden Valley Lakes, Inc., supra,* 404 F.Supp. at 583–84 (N.D.Miss.1975). Further, the question of whether, in the words of § 1711, "such discovery *should* have been made [earlier] by the exercise of reasonable diligence" (emphasis added), thus making the action untimely, is one of disputed fact which cannot be decided on this motion for summary judgment and must await proof at trial. *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551 (2d Cir. 1977); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317 (2d Cir. 1975). Accordingly, defendants' motion addressed to the causes of action alleged under 15 U.S.C. § 1709(a) or (b)(2) must be denied.

### Exchange Act

Plaintiffs also allege that defendants' conduct constituted violations of § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1977), contending that their purchase of the property constituted an "investment contract," and therefore a "security", within the meaning of the securities laws. *See* § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), and § 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10). Defendants deny that the real estate transaction in issue involved the sale of a "security" and therefore seek summary judgment dismissing this cause of action. In light of the inadequate factual record presently before it, this court denies the motion with leave to renew upon presentation of further evidence at trial.

■ Determination of whether an "investment contract" exists must depend largely on the facts of the particular transaction in issue, for the Supreme Court has recognized that the concept "embodies a flexible rather than a static principle, one that is capable of adaptation." *SEC v. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), and that "form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). *See United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) ("shares of stock" in co-operative apartment held not to constitute securities). The guiding principle was established in *SEC v. Howey, supra,* 328 U.S. at 298–99, 66 S.Ct. at 1103:

[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

■ If the residential lots here in issue represented an asset to be developed or occupied by the purchaser rather than an investment to be managed by the efforts of others, the real estate transaction would not constitute an investment contract. *United Housing Foundation Inc. v. Forman, supra,* 421 U.S. at 852–53, 95 S.Ct. 2051, *SEC v. Howey, supra,* 328 U.S. at 298–301, 66 S.Ct. 1100. To determine this issue the court must consider the motivation of the purchaser, *Forman, supra,* 421 U.S. at 852–53, 95 S.Ct. 2051, *Howey, supra,* 328 U.S. at 300, 66 S.Ct. 1100, as well as the promotional emphasis of the developer, *SEC v. Joiner Corp.,* 320 U.S. 344, 348–49, 352–53, 64 S.Ct. 120, 88 L.Ed. 88 (1943); *Timmreck v. Munn, supra,* 433 F.Supp. at 402; *Davis v. Rio Rancho Estates, Inc., supra,* 401 F.Supp. at 1049–50. Although it appears from the complaint (Para. 7) that plaintiffs, rather than the defendants, first advanced the proposition that the property represented investment potential, the issue cannot be

decided with certainty in the absence of a consideration of defendants' promotional representations. *Timmreck v. Munn, supra,* 433 F.Supp. at 404; *cf. Forman, supra,* 421 U.S. at 853–54, 95 S.Ct. 2051 (Court found that "Information Bulletin" distributed by promoters to prospective residents clearly did not "seek to attract investors by the prospect of profits resulting from the efforts of the promoters or third parties." *Id.* at 854, 95 S.Ct. at 2061); *Joiner, supra,* 320 U.S. at 346–47 and n.3, 64 S.Ct. 120, 121 (Court noted that "the advertising literature emphasized the character of the purchase as an investment and as a participation in an enterprise." *Id.,* at 346, 64 S.Ct. at 121); *Davis v. Rio Rancho Estates, supra,* 401 F.Supp. at 1049–50 (court found that "defendants' promotional materials, fairly read, place more emphasis on development of a residential community than on purchase as an investment." *Id.,* at 1049).

In addition to the foregoing considerations, the court must also examine the nature of the property interest purchased by plaintiffs, for the "test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Howey, supra,* 328 U.S. at 301, 66 S.Ct. at 1104. In *Howey,* investment contracts were held to exist where the sale of land interests in citrus groves was coupled with management service contracts pursuant to which the promoters retained full and complete possession of the property, cultivated and marketed the crops, and allocated net profits to the purchasers. Similarly, sales of leasehold rights were held to be transactions involving investment contracts in *SEC v. Joinder Corp., supra,* where the purchasers obtained not simply interests in land but shares in the discovery value of well-drilling explorations for oil, which were currently being conducted by the promoters and which constituted the economic enterprise which was being offered for investment. 320 U.S. at 348–49, 64 S.Ct. 120. As the Supreme Court has noted, in *Joiner* "[t]he land itself was purely an incidental consideration in the transaction." *Forman, supra,* 421 U.S. at 853 n.18, 95 S.Ct. at 2061.

By contrast, it is not clear in the instant case that there was a "common enterprise" involving the exploitation of the underlying physical assets exclusively by the promoters with the purchasers guaranteed their proportionate share in the net return. However, the developers did represent that a variety of residential services and recreational facilities would be developed so as to increase the value of plaintiffs' property along with all of the lots in the development. *Compare McCown v. Heidler,* 527 F.2d 204, 209–211 (10th Cir. 1975) (recognizing that plaintiff "who purchased a Timberlake lot, not to build thereon but to hold solely as an investment, could be relying upon the managerial efforts of [the promoters] for the management and appreciation of his investment." *Id.,* at 211) *with Davis v. Rio Rancho Estates, supra,* 401 F.Supp. at 1050 ("Defendants did not promise to run the development and distribute profits to the plaintiff . . . . There was no management contract between plaintiffs and defendants, nor were defendants obligated by the Purchase Agreement to perform any such services . . . In the absence of a 'common enterprise' between the parties, the expectation of a profit on resale is insufficient to transform what is essentially a sale of real property into the sale of an investment contract." *Id.,* at 1050).

▮ In light of the foregoing considerations, a determination of whether the transaction in issue involved an "investment contract" must await further factual proof, and the motion for summary judgment dismissing the § 10(b) claim must be denied.

### Individual Defendants

▮ In their complaint, plaintiffs generally charge "the defendants" with the misconduct discussed *supra,* and fail to distinguish the specific involvement of each particular defendant. Several defendants seek summary judgment dismissing the complaint as to them on the ground that, as a matter of fact, they were in no way involved with the transactions complained of. As to all but one of the moving defend-

ants, these claims are directly contested by the affidavit of plaintiff Thomas Fogel, submitted in opposition to the motion, and therefore involve disputed issues of material fact which are incapable of resolution by summary judgment. However, plaintiffs do not contest the assertion that defendant Resort Properties, Inc., "as a matter of fact, had no connection with any of the operations mentioned in the complaint." Affidavit of Rick Ebenstein submitted in support of motion for summary judgment, p. 2. Accordingly, the complaint must be dismissed as to Resort Properties, Inc.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted to the extent that plaintiffs' claims against Resort Properties, Inc., and those causes of action alleging violations of § 1404(a)(1) of the Land Sales Act, 15 U.S.C. § 1703(a)(1), must be dismissed. In all other respects the motion is denied.

So Ordered.