730 P.2d 480

**Lloyd C. SCOTT and Annette Scott, indi-**
**·vidually and as shareholders of the La-**
**dron Corporation, a New Mexico corpo-**
**ration, Plaintiffs-Appellees,**

v.

**James R. WOODS and Patricia V.**
**Woods, Defendants-Appellants.**

No. 8149.

Court of Appeals of New Mexico.

Aug. 7, 1986.

Certiorari quashed Nov. 25, 1986.

Keith S. Burn, Norman E. Todd, Keith S. Burn, P.A., Linda S. Bloom, Las Cruces, for plaintiffs-appellee.

Quincy D. Adams, Adams & Foley, P.C., Kenneth S. McDaniel, Albuquerque, for defendants-appellants.

## OPINION

MINZNER, Judge.

Defendants James R. and Patricia V. Woods, husband and wife, appeal jury verdicts of $250,000 in favor of plaintiff Ladron Corporation and $200,000 in favor of plaintiffs Lloyd C. and Annette Scott, husband and wife. Their appeal raises the question of whether, under the New Mexico Constitution, a party may demand a jury trial on legal issues arising in a stockholder's derivative suit, and, if so, whether plaintiffs' derivative suit included issues to which the right of jury trial attached. We conclude that the trial judge erred in denying the Woods' motion to sever or, in the alternative, for separate trial because plaintiffs' claim on behalf of the corporation asked the court for equitable relief on equitable grounds; we hold, further, that the judgments must be set aside, and the cause remanded for a new trial.

### Background

In 1981, the Scotts and the Woods decided to purchase and operate a liquor package store and lounge known as the Roadrunner Lounge, in Socorro, New Mexico. They also decided to use Ladron Corporation, which had been created by the Woods but never funded, to acquire title. Each of

the individuals received equal shares of stock in Ladron, assumed a corporate office, and became a member of the board of directors. The Roadrunner Lounge was located next to the Scotts' auto parts store.

Ladron borrowed $200,000 from the First National Bank of Belen and $130,000 from the First National Bank of Socorro. The Scotts and the Woods personally guaranteed the indebtedness. Ladron then purchased the property on which the Roadrunner was located, paying $60,000 for the buyer's interest and assuming a balance of $60,000 due the seller, S.E. Gutierrez, and acquired an initial inventory for $140,000.

From late 1981 to the end of 1982, the record indicates the parties participated in an informal management arrangement. The board of directors never met, and Mr. Woods and Mr. Scott discussed and resolved problems as they arose. During this period, responsibility for the books, a central issue at trial, shifted several times. The package store opened on November 17, 1981, and the lounge opened on December 11, 1981 under a full-time manager and an assistant manager.

Mrs. Scott, who kept the auto parts store books, set up the first books and initially did the bookkeeping. In January 1982, she relinquished the books to the Woods' adult son, Peter. He may have delivered them to Mrs. Woods. In March 1982, the full-time manager was replaced by his assistant, Jon Jaramillo; there was evidence at trial of friction between Jaramillo and Mrs. Woods, and in April, Mr. Woods advised her to stay away from the Roadrunner. After Peter returned to school in the fall of 1982, Mr. Scott agreed to pick up the daily cash register tapes, Mr. Woods said he would pay the bills, and they hired a bookkeeper to do tax reports and payroll. It is clear that Mrs. Woods also did some bookkeeping; an accountant, who was interested in selling computer equipment, sold her a small computer and allowed Ladron to use his larger one. Mr. Scott testified that he and Mr. Woods discussed selling the Roadrunner in November. Nothing was decided.

In mid-January 1983, Mr. Scott learned from Jaramillo that suppliers had placed the Roadrunner Lounge on a cash basis. On further inquiry, Jaramillo determined that the corporation owed eighty or ninety thousand dollars to different suppliers, and the debts were six months old. When approached, Mr. Woods said that the corporation had forty to sixty thousand dollars available; he also said he would pay the outstanding bills.

In addition to this financial emergency, other problems in operating the business soon surfaced. The informal management arrangement proved ineffective.

The record indicates that sometime in the spring of 1983, the Scotts told the Woods that they no longer wanted to participate in management, and there was further discussion of selling the business. In April 1983, Mr. Scott discontinued picking up the cash register tapes; Jaramillo took over this task. In May 1983, Mrs. Woods took over operation of the package store, and Jaramillo was restricted to operating the bar. He and Mrs. Woods continued to have difficulties working together; he quit in July 1983. Peter replaced him in the bar, and Mrs. Woods became manager. She did the bookkeeping with assistance from the accountant. In July or August 1983, the Roadrunner was listed for sale at approximately $450,000. The best offer received was $360,000. Mr. Scott testified that he rejected the offer on Mr. Woods' advice.

More financial and management difficulties surfaced after the business was listed for sale. The informal management arrangement now failed.

The First National Bank in Socorro brought suit against the Scotts and the Woods in October 1983 on their 1981 guaranty. The Scotts hired an attorney, who made a formal request for access to the corporate records, and the board of directors held its first formal meeting in November 1983. At that meeting, which the Woods secretly taped, the Scotts expressed satisfaction with Mrs. Woods' management, and she continued operating the business. There was evidence at trial, how-

ever, that the Scotts made their statements only because Mr. Woods privately begged Mr. Scott to do so. Peter became manager in December 1983. In January 1984, the Internal Revenue Service notified Ladron that taxes were due for the periods ending June 30, 1982 and December 31, 1982.

The Scotts and the Woods settled the bank suit in February 1984, but the Scotts themselves sued in March. The Scotts' complaint contained six counts. With respect to all counts but the first, plaintiffs claimed compensatory and punitive damages as provided in the ad damnum clause. In the first count, plaintiffs asked that a receiver be appointed and for various injunctions. The first count appears to be a claim brought primarily on behalf of the corporation, but it also alleges grounds for dissolution. *See generally* NMSA 1978, § 53–16–16(A) (Supp.1986) (authorizing the district court to liquidate corporate assets in an action by a shareholder). The sixth count is a claim brought only on behalf of the Scotts. The other counts appear to have been brought on behalf of Ladron, as well as the Scotts. Under the Scotts' theory of the case, the Woods had injured the corporation by various kinds of misconduct and, in injuring the corporation, had injured the Scotts individually.

The Woods answered. They also counterclaimed on behalf of themselves and Ladron. Under the Woods' theory of the case, the Scotts had abandoned management of the corporation, failed to participate in additional capitalization as agreed, and otherwise breached fiduciary duties. Additionally, the Woods claimed breach of a partnership agreement between Mr. Woods and Mr. Scott.

The trial court appointed a receiver on April 10. He found no books and records, only a few records of cash balances in 1982 and a bar inventory. There were several checkbooks, which were not current. By calling creditors, he determined that forty or fifty thousand dollars was due different distributors. On April 11, the accountant who had helped Mrs. Woods in 1982 and

1983 was appointed as co-receiver, and the court ordered an inventory.

The relationship among the parties and members of their family grew progressively worse. At one point, the Socorro police arrested Peter for interfering with the receivers, and he in turn sued the original receiver and the Scotts' lawyer. On May 14, the trial court relieved the accountant as receiver. The court also entered a preliminary injunction enjoining the parties from "contacting, threatening or harassing one another, or the agents and family members of the parties * * *." In May 1984, Peter purchased the seller's interest in the Gutierrez real estate contract. He also purchased the note owed the First National Bank of Belen, although the date is not certain. After the receivership ended, he sought to foreclose on the real estate contract. He also sued the Scotts on the Belen bank note. The present suit came to trial about the time Peter attempted to retake the underlying property under the real estate contract.

The Woods consistently objected to a jury trial of the issues relating to the claims made on behalf of Ladron. Prior to trial, they moved to sever, or try separately, the issues raised by the suit on behalf of Ladron; they argued that plaintiffs were not entitled to a jury trial of those issues because they raised equitable issues or because plaintiffs had asked for equitable relief. Plaintiffs argued that they were entitled to a jury trial on all issues because they had either raised legal claims, asked for damages, or raised factual issues. The trial court denied the motion.

The trial court permitted evidence that Mrs. Woods had made trust fund money available to Peter at the time he acquired the Gutierrez' interest and that his father assisted him in acquiring the Belen bank's interest. The trial court refused to permit Peter's counsel to testify about Peter's reasons for foreclosing on the real estate contract. The Woods objected to both rulings, claiming that they should have been permitted to establish their lack of involvement in Peter's activities. At this point,

plaintiffs' counsel argued to the court that the evidence admitted concerning Peter's conduct was relevant on the issue of his parent's fraud. The record does not indicate whether the evidence was admitted with respect to the corporate claim or claims, claims made on behalf of the Scotts individually, or both.

The Woods submitted requested findings of fact and conclusions of law. None were entered; rather, the trial court instructed the jury on issues related to the first, second, third and sixth counts. The trial court denied defendants' request for special interrogatories.

The jury returned a verdict in favor of Ladron, finding by special interrogatory that there were grounds for dissolution and liquidation. They also returned a verdict for the Scotts, which included $50,000 punitive damages. The Woods moved for remittitur or, in the alternative, for a new trial, claiming error in denying their pre-trial motion, instructing the jury, and in admitting evidence.

**Discussion**

The Woods contend that all of the issues relating to the derivative action should have been decided by the court; because the equitable nature of a derivative action controls, there is no constitutional right to a jury trial. They also claim that the trial court erred in instructing the jury to determine whether Ladron should be dissolved.

Plaintiffs initially suggest that the New Mexico Business Corporation Act authorizes a jury trial in a shareholder's derivative action. *See* NMSA 1978, § 53–11–47 (Repl.Pamp.1983). This statute, however, does not answer the appellate issues, although it affects a shareholder's right to bring derivative suits on behalf of the corporation. *See generally* Wellborn and Barker, *1975 Amendments to the New Mexico Business Corporation Act,* 6 N.M. L.Rev. 57, 58, 69–70 (1975).

Relying on *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), plaintiffs also contend that the issues they raised on behalf of Ladron are legal rather than equitable and, because there are fac-

tual issues underlying the right to dissolution, the trial court properly submitted all the claims they raised on behalf of the corporation to the jury. In *Ross v. Bernhard,* the United States Supreme Court said:

> [W]here equitable and legal issues are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues incidental to the equitable ones or by a court trial of a common issue existing between the claims. The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.

396 U.S. at 537–38, 90 S.Ct. at 737–38. In that case, the Court held these principles were applicable to a shareholder's derivative action.

*Ross v. Bernhard* involved damages for injuries sustained by the corporation as a result of allegedly excessive brokerage commissions authorized by the directors. The Court further observed:

> [W]e have no doubt that the corporation's claim is, at least in part, a legal one. The relief sought is money damages. There are allegations in the complaint of a breach of fiduciary duty, *but there are also allegations of ordinary breach of contract and gross negligence.* The corporation, had it sued on its own behalf, would have been entitled to a jury's determination, at a minimum, *of its damages against its broker under the brokerage contract and of its rights against its own directors because of their negligence.* Under these circumstances, it is unnecessary to decide whether the corporation's other claims are also properly triable to a jury.

396 U.S. at 542–43, 90 S.Ct. at 740. (emphasis added).

██ As the Woods contend, however, *Ross v. Bernhard* relies on the right to jury trial protected by the seventh amendment. In this case, the question is the scope of the right to jury trial protected by

the state constitution. *See* N.M. Const. art. II, § 12. Although the seventh amendment governs the right to trial by jury in federal courts, it does not control the right to jury trial in state courts. *Pelfrey v. Bank of Greer*, 270 S.C. 691, 244 S.E.2d 315 (1978). *See generally* D. Dobbs, *Remedies* § 2.6 (1973).

The Woods' contentions raise three appellate issues, which the parties have addressed somewhat differently. These issues are: (1) whether the right to jury trial in New Mexico attaches to legal issues arising in a derivative suit, (2) whether the derivative action on behalf of Ladron and the prayer for dissolution included issues triable to a jury, and (3) whether reversible error occurred at trial. We address each issue separately.

## 1. Right to Jury Trial in a Shareholder's Derivative Suit

The result in *Ross v. Bernhard* has not yet been adopted by many state courts. *See generally* 32 A.L.R.4th 1111 (1984). The result has been criticized as historically and analytically unsound. *See* Note, *Ross v. Bernhard; The Uncertain Future of the Seventh Amendment*, 81 Yale L.J. 112 (1971); Note, *Jury Trial in a Stockholders' Derivative Suit*, 65 Nw.U.L.Rev. 697 (1970). We recognize that the result rests on a legal fiction that is not consistent with the historical development of the derivative suit, *see generally* Prunty, *The Shareholders' Derivative Suit: Notes on its Derivation*, 32 N.Y.U.L.Rev. 980 (1957), and that it introduces a new complexity, illustrated by this appeal, which creates practical problems for the trial court.

Developed as a corrective for managerial abuse when minority shareholders had been wrongfully deprived of an effective voice, the derivative suit was recognized on the theory that a breach of trust had occurred, which the shareholders were entitled to remedy, and on the principle that the remedy was enforcement in equity of a corporate right of action. Once the shareholder was allowed to proceed on behalf of the corporation, the equity court entertained the entire proceeding; it was not necessary to identify and separate the claims made on behalf of the corporation. *Ross v. Bernhard* introduces a new complexity; under that decision, each claim asserted on behalf of the corporation must be evaluated separately. *See Camrex (Holdings) Ltd. v. Camrex Reliance Paint*, 90 F.R.D. 313 (E.D.N.Y.1981). Yet, prior to *Ross v. Bernhard*, the derivative action had been treated as a unitary suit. Consequently, prior case law provides uncertain guidance to the trial judge who must evaluate the individual claims made on behalf of the corporation.

Nevertheless, *Ross v. Bernhard* clearly extends the use of the jury trial on the principle that extension is desirable. That principle has been recognized by our supreme court. *See Evans Financial Corp. v. Strasser*, 99 N.M. 788, 664 P.2d 986 (1983).

In addition, the result gives the trial court useful flexibility in managing and resolving disputes by emphasizing substance rather than form. *Cf. Mogollon Gold and Copper Co. v. Stout*, 14 N.M. 245, 91 P. 724 (1907) (where right to damages is merely incidental and dependent upon plaintiff's right to an injunction, the court may assess damages already sustained; if the action is brought primarily for the recovery of a money judgment, it is triable by a jury). Under the three-part test approved in *Ross v. Bernhard*, the trial court identifies issues for jury determination by taking into account the nature of the underlying claim, as well as its historical origins, and the practical limitations of the jury or, as more commonly stated, the trial court considers a three-prong test: (1) premerger custom, (2) remedy sought, and (3) abilities and limitations of juries. *Cf. United States v. State of New Mexico*, 642 F.2d 397 (10th Cir.1981) (applying federal law in a diversity action and recognizing a right to jury trial in a suit for declaratory and injunctive relief and recovery of taxes). Thus, the nature of the issues to be tried and the trial court's contemporary capacity to grant relief become more signif-

icant than the terminology used in the complaint or past practice when courts of equity were separate from courts of law.

In fact, *Ross v. Bernhard* applied the earlier, flexible analysis expressed in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and extended in *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). In the former case, the Court refused to allow the order in which issues arose to control a party's right to a jury trial. After that decision, "it is no longer enough to say that an action was conceived in equity and was always brought in that court; the 'nature of the issue' presented is the determinative factor. Yet, the nature of issue is almost always determined by surrounding circumstances and the manner in which they are presented." Note, 65 Nw.L.Rev. at 706–07. In the latter case, the Court noted that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." 369 U.S. at 477–78. The former case was cited with approval and applied in *Evans Financial Corp. v. Strasser.*

██ For these reasons, we adopt the rule of *Ross v. Bernhard.* Under New Mexico's constitutional provision for jury trials, if a shareholder's derivative suit raises legal claims or issues as to which the corporation is entitled to a jury trial, those claims or issues should be tried to a jury on demand. As to other issues, triable to the court, the trial court must make findings of fact and enter conclusions of law even if an advisory jury is used, *see Romrell v. Zions First Nat. Bank, N.A.,* 611 P.2d 392 (Utah, 1980), or otherwise place the appellate court in a position to pass upon the issues raised on appeal. *See Mallory v. Citizens Utilities Co.,* 342 F.2d 796 (2nd Cir.1965). Where legal and equitable issues have been joined, the trial court must determine the mode and order of trial consistent with the rules articulated in *Beacon Theatres, Inc. v. Westover* and *Dairy Queen v. Wood. See Ford v. C.E. Wilson & Co.,* 30 F.Supp. 163 (D.Conn., 1939).

## 2. Whether the Scotts' Suit on Behalf of Ladron Raised Issues Triable by Jury

We have assumed that plaintiffs' claims on behalf of Ladron present, at least in part, a derivative action rather than an action seeking relief on the basis of a fiduciary duty owed the Scotts, as nonmanaging stockholders, by the managing stockholders. *Cf. Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505 (1975) (stockholders in a close corporation owe one another the same fiduciary duty as that owed by one partner to another in a partnership). We based our assumption on the form of the complaint, the parties' theories at trial, and the arguments on appeal. *Id.* at 579–80, 328 N.E.2d at 508 n. 4. For the reasons that follow, our conclusion does not depend on the correctness of that assumption.

██ Plaintiffs argue that because they sought, on behalf of Ladron, money damages for breach of fiduciary duty, fraud, negligence and conversion, there was a right to a jury trial on all issues raised by their suit. That is not the meaning of *Ross v. Bernhard;* the right to a jury trial does not follow from the terminology employed in the complaint. Rather, the analysis articulated in *Beacon Theatres* and applied in *Ross v. Bernhard* shifted the question before the trial court "from the presence of a basis for equitable relief to the presence of a legal issue." 5 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 38.-16[2] (2d ed. 1985). The critical inquiry is whether a right to jury trial has been established by the party making the demand.

The question before the trial court in this case was whether plaintiffs had identified a legal issue with respect to claims made on behalf of the corporation. *See generally Gartenberg v. Merrill Lynch Asset Management, Inc.,* 487 F.Supp. 999 (S.D.N.Y.1980), *mandamus denied sub. nom., In re Gartenberg,* 636 F.2d 16 (2d Cir.1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981). A claim for money damages must be a valid one. *See Rowell v. Kaplan,* 103 R.I. 60, 235 A.2d 91 (1967).

■ The existence of common issues of fact does not mean that the entire lawsuit should be tried to a jury. Rather, joining a legal with an equitable claim gives the plaintiff a right to have common issues of fact decided by a jury and can provide a right to have the legal claims tried first. *In re Evangelist*, 760 F.2d 27 (1st Cir. 1985).

■ Plaintiffs claimed the existence of a deadlock, illegal, oppressive and fraudulent acts, misapplication and waste of assets and asked the court to order dissolution and liquidation. This claim seeks an equitable remedy on equitable grounds. *See generally* 19 Am.Jur.2d *Corporations* § 2782 (1986). The trial court, in its discretion, orders dissolution on a proper showing. *Id.* In a similar case, the supreme court referred to the court's power as that which "is necessary to do justice to all involved." *See Prager v. Prager*, 80 N.M. 773, 776, 461 P.2d 906, 909 (1969).

This claim should not have been submitted to the jury. The decision it requires is often made only after consideration of alternative forms of relief. These include purchase of plaintiffs' shares, partition and reorganization. *See generally McCauley v. McCauley*, 104 N.M. 523, 724 P.2d 232 (Ct.App.1986). In addition, the nature of a claim for dissolution is such that the trial court must determine the propriety of dissolution. *See Stefano v. Coppock*, 705 P.2d 443 (Alaska 1985).

■ Plaintiffs also sought damages for negligent and intentional mismanagement and for fraud. Because the substance of the facts alleged in this case are critical in analyzing the remedy sought, we have reviewed the allegations in light of the instructions. *Cf. Seneca v. Novaro*, 80 A.D.2d 909, 437 N.Y.S.2d 401 (1981), On these facts, we must separate plaintiffs' theories of liability from their damages claims. *Cf. Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889 (D.C.Pa.1985) (holding statutory damages provided for copyright infringement to be equitable in nature).

Plaintiffs' claim of negligence on behalf of Ladron was submitted on the basis of failure to keep a proper set of books and waste of assets; the claim of intentional mismanagement was submitted to the jury on the basis of refusing access to financial records, harassment of employees so that they quit, conversion or misappropriation, failure to keep proper books, and waste. These are claims that the directors breached fiduciary duties that arose from their status either as de facto managers or as controlling shareholders. *See Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270 (Alaska 1980). *Cf. Camrex (Holding) Ltd. v. Camrex Reliance Paint* (claim against directors based on loss due to breach of corporate contract stated legal claim for jury trial). Thus, the standard against which the claimed misconduct must be measured arose from their relationship with the Scotts rather than from the terms of a contract or the standards appropriate in finding tortious conduct. *See Jaffe Commercial Finance Co. v. Harris*, 119 Ill. App.3d 136, 74 Ill.Dec. 722, 456 N.E.2d 224 (1983). This presented an equitable ground for relief. *See Seneca v. Novaro.*

■ Similarly, plaintiffs claimed that the Woods acted fraudulently toward Ladron. The jury was instructed that they should find fraud if they determined that:

(1) the Defendants failed to keep a proper set of books and records of LaDron Corporation;

(2) Defendants refused to allow Plaintiffs to have access to the financial records of LaDron Corporation;

(3) Defendants misapplied and wasted assets of LaDron Corporation;

(4) Defendants converted to their own use money and assets owned by LaDron Corporation;

(5) Defendants made secret unauthorized withdrawals of LaDron Corporation assets;

(6) Defendants, or either of them, provided funds to their son, Peter Woods, which enabled Peter Woods to purchase the owner's interest in the so-called S.E. Gutierrez real estate contract and which

allowed Peter Woods to attempt to foreclose Plaintiffs' and LaDron Corporation's interest in the Roadrunner Lounge property;

(7) Defendants, or one of them, provided funds to their son, Peter Woods, which enabled Peter Woods to purchase from the First National Bank of Belen the promissory note owed by LaDron Corporation and all collateral thereon, including the personal guarantees of the Plaintiffs, and which enabled Peter Woods to file suit against Plaintiffs on such guarantees.

These instructions, with the exception of the last two, are essentially the same ones asserted in support of the claim of intentional mismanagement.

These instructions are all generally based on the equitable theory of a breach of fiduciary duty and, since they do not identify legal claims separately, do not satisfy plaintiffs' obligation to identify claims or issues triable to the jury. *See In re Evangelist.* Plaintiffs sought to prove wrongful dealing with corporate property. To the extent a claim was stated on behalf of the corporation, it was a claim of misconduct by a fiduciary to be analyzed by the court. *See generally* IV J. Pomeroy, *Equity Jurisprudence* § 1095 (S. Symons 5th ed.1941) (the kinds, forms, and methods by which such wrongful acts may be committed and recognized in equity are practically unlimited in number and variety). Because judges are not business experts, courts have been reluctant to substitute their judgment for that of the board of directors. *Alaska Plastics v. Coppock.* In view of this principle, expressed in the business judgment rule, we cannot say plaintiffs identified a legal issue as to liability on behalf of Ladron.

This case arose from a close friendship between Mr. Scott and Mr. Woods, which deteriorated as the business relationship in which they had invested substantial money and energy proved unsuccessful. The record indicates that emotions at trial were high, and there was considerable mutual mistrust and bitterness. As the trial court

noted, it was never clear whether Ladron was a corporation or a partnership. Plaintiffs contended that all of the Woods' acts were done with a view to gaining an unfair advantage over plaintiffs and to cause injury to plaintiffs and to Ladron Corporation itself. We have assumed, for purposes of this appeal, that a derivative suit was stated, rather than a claim as individual shareholders. Whether viewed as a derivative claim, or an individual one, having joined legal and equitable claims, plaintiffs failed to identify either common issues of fact or legal issues with respect to liability.

■ As to money damages, the trial court refused an instruction based on revenues lost as a result of Mrs. Woods' conduct toward or in front of customers. Thus, plaintiffs' claim for money damages was based on a claim that sums not shown to be legitimate corporate expenses, sums shown received but not deposited, and expenditures not supported by receipts should be repaid. We view this claim as a claim for restitution based on a proper accounting. It is a claim for equitable, rather than legal, relief. *Compare Fedoryszyn v. Weiss,* 62 Misc.2d 889, 310 N.Y.S.2d 55 (1970) (where sole relief requested was a money judgment, right to a jury trial was stated) and *Rizzo v. Saltmarsh, Cleaveland and Gund,* 341 So.2d 818 (Fla.App. 1977) (although plaintiff sought damages, the claim in effect sought to establish a fiduciary relationship, a partnership, and obtain an accounting, which involved extensive or complicated accounts).

We conclude that plaintiffs failed to demonstrate, either in their complaint or the instructions, an issue or claim, on behalf of the corporation, that was triable to the jury within the meaning of *Ross v. Bernhard.* The next question is the existence and extent of reversible error.

### 3. Whether Reversible Error Occurred

In this case, defendants challenged the judgment and verdict as to Ladron, the order of dissolution, and the judgment and verdict as to the Scotts. For the sake of clarity, we discuss separately the disposi-

tion as to Ladron and the disposition as to the Scotts.

### a. The Judgment and Verdict as to Ladron and the Order of Dissolution

■ Defendants preserved error under NMSA 1978, Civ.P.Rules 21 and 42(b) (Repl.Pamp.1980), when they moved to sever or try separately, and under NMSA 1978, Civ.P.Rule 52(B) (Repl.Pamp.1980), when they requested findings of fact and conclusions of law and objected to the instructions on the corporation's claim. Under Rule 42(b), a separate trial is appropriate, if necessary to avoid prejudice. The decision to grant such a motion is a matter within the sound discretion of the trial court, not to be disturbed in the absence of an abuse of discretion. *Mendenhall v. Vandeventer*, 61 N.M. 277, 299 P.2d 457 (1956). In exercising this discretion, however, the trial court was required to analyze the issues presented by plaintiffs' derivative action, there being no claim at trial or on appeal that the Scotts lacked the right to sue as shareholders. *See Alaska Plastics v. Coppock.*

The trial court did not enter findings of fact and conclusions of law to sustain the judgment in favor of the corporation. In the absence of a legal issue, the jury was advisory. Under these circumstances, the judgment in favor of the corporation may not stand. *Mallory v. Citizens Utilities Co.; Romrell v. Zions First Nat. Bank, N.A.* The error is the equivalent of an abuse of discretion.

On remand, plaintiffs will have another opportunity to identify any legal issues for which a jury trial is required. If such issues are identified, the trial court will need to determine the appropriate sequence at trial. *See Evans Financial Corp. v. Strasser. See generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2338 (1971).

With respect to the order of dissolution, the jury was instructed to determine whether dissolution was appropriate, apparently on the theory that there were issues of fact common to the other claims. Instruction No. 2, based on NMSA 1978, UJI Civ. 3.3 (Repl.Pamp.1980), provided in part:

The Plaintiffs, Lloyd C. Scott and Annette Scott ask to have LaDron Corporation dissolved and the assets of LaDron Corporation liquidated. In order for LaDron Corporation to be dissolved and its assets sold and liquidated, the plaintiffs have the burden of proving any of the following elements:

(1) the directors of LaDron are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock and that irreparable injury to the corporation is being suffered or is threatened. by reason thereof; or

(2) the acts of the directors or those in control of the corporation are illegal, oppressive or fradulent; or

(3) the corporate assets are being misapplied or wasted.

The plaintiffs contend that all of these elements have occurred but the occurrence of any one of the above elements, if proved, establishes that LaDron Corporation should be dissolved and that its assets should be sold and liquidated at the future direction of the Judge.

This instruction does not use the jury as an advisory jury. The trial court did not enter findings of fact and conclusions of law to support the order dissolving the corporation pursuant to the jury finding. *See generally McCauley v. McCauley.* That order also must be reversed. *See Romrell v. Zions First Nat. Bank, N.A.; Romell v. Kaplan.*

### b. The Judgment and Verdict as to the Scotts

■ The Woods contend that the verdict in favor of the Scotts individually is not supported by substantial evidence or, in the alternative, that it must be reversed as excessive. This issue was preserved by motion for directed verdict. The Scotts concede that the actual amount of damages was not proved but, relying on *Wirth v.*

*Commercial Resources, Inc.,* 96 N.M. 340, 630 P.2d 292 (Ct.App.1981), argue no greater specificity was required. The Woods also contend that various instructions and evidentiary rulings to which they objected were erroneous, prejudiced the jury, and caused or contributed· to an excessive award. For the following reasons, we hold that reversible error occurred with respect to the second judgment.

The jury was instructed on seven acts, as evidence to be considered in finding for either Ladron or the Scotts on the basis of fraud or deceit. That instruction is reproduced above in subsection 2. All of these acts occurred after Ladron was operating the Roadrunner and concerned the corporate management. The instruction on damages to the Scotts individually does not state elements associated with a claim of fraud.

We conclude that the claim of fraud was actually included in the claim made on behalf of Ladron. We have held that the claim made on behalf of Ladron should not have gone to the jury. Consequently, two theories of liability to the Scotts as individuals were submitted to the jury, although only one was appropriate. The jury returned a general verdict. The instructions on damages were not sufficient to clarify the jury's obligation. Under these circumstances, the judgment in favor of the Scotts must be reversed, and the cause remanded for a new trial. *See Gerety v. Demers,* 86 N.M. 141, 520 P.2d 869 (1974).

■ With respect to the sufficiency of the evidence of liability on the claim of emotional distress, the instructions advised the jury that plaintiffs might recover if they proved that defendants "intentionally or recklessly acted in an extreme or outrageous manner." Because the instructions on liability presented alternative theories, the jury was permitted to find liability on various kinds of misconduct, some of which did not present legal issues, rather than equitable claims. Under these circumstances, appellate review of the evidence would not be appropriate. We do not give advisory opinions, and the scope of this tort

is still evolving. *See Trujillo v. Puro,* 101 N.M. 408, 683 P.2d 963 (Ct.App.1984).

■ Finally, with respect to damages, under the jury instructions, the Woods' liability to Ladron was hopelessly blended with their liability to the Scotts individually. Plaintiffs' counsel argued to the jury that he had proved misconduct toward Ladron, which in turn harmed the Scotts individually, but the instructions on damages failed to separate the elements of injury to Ladron from the elements of injury to the Scotts individually. This created a potential for double recovery. *Cf. Clappier v. Flynn,* 605 F.2d 519 (10th Cir.1979) (holding error occurred when judgment was awarded under common law claim for negligence as well as civil right claim; double recovery precluded when alternative theories seeking same relief are tried together). Although defendant did not specifically claim error on this basis at trial, we hold the issue was preserved by their motion for a new trial, as well as their objections to the instructions and their motion to sever. *See id.*

■ A verdict is excessive if the evidence, viewed in the light most favorable to the winning party, does not provide substantial support for the amount awarded or if there is an indication of passion, prejudice, partiality, undue influence, or a mistaken measure of damages on the part of the fact-finder. *Gonzales v. General Motors Corp.,* 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976). In this case, the instructions on liability and the instructions on damages not only created a potential for double recovery, they also provided a mistaken measure of damages.

The instructions on liability provided alternative theories for recovery on the same facts; instructions on damages insufficiently limited plaintiffs to a single recovery. In fact, the instructions on damages to the Scotts individually included a sum for obligations they incurred which Ladron could have paid if managed properly. The instruction on damages due the corporation

had, however, already stated separate claims for lost revenues and lost profits.

In closing argument, plaintiffs' counsel suggested that the jury could award Ladron as much as $350,000 in compensatory damages for the Woods' misconduct in managing the business and that they could award the Scotts as much as $100,000 in damages for the emotional distress they had suffered. The compensatory damages awarded to Ladron, together with the compensatory damages awarded the Scotts, were twenty times the amount of actual damages proved and argued to the jury. In addition, the sum awarded the Scotts approximated the sum awarded Ladron. Under these circumstances, even if the jury's decision as to liability could be sustained, the verdict could not. *See Gonzales v. General Motors Corp.*

### Conclusion

Plaintiffs have asked for an award of damages for a frivolous appeal. They claimed that all but one issue was based on sufficiency of the evidence and abuse of discretion and that the remaining issue is based on an outmoded distinction between law and equity. In short, they claim the Woods' appeal is groundless and made in bad faith for purposes of delay. In view of our disposition, the request is denied.

While this case was pending, defendants moved to remand for an evidentiary hearing on a motion under NMSA 1978, Civ.P. Rule 60(b) to set aside the judgment. The motion was made after the case had been submitted to a panel and a decision on the merits had been reached but prior to the time the opinion had been filed. In view of the decision, the motion to remand is moot.

The verdict in favor of Ladron Corporation and the order for dissolution is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion. The verdict as to liability in favor of the individual plaintiffs, including the award of compensatory and punitive damages, is reversed and the cause is remanded for a new trial. The Woods shall recover their appellate costs.

IT IS SO ORDERED.

ALARID and GARCIA, JJ., concur.