1997-NMCA-055

943 P.2d 554

**LAS CAMPANAS LIMITED PARTNER-SHIP, a Delaware Limited Partnership, Plaintiff–Appellee,**

v.

**Napoleon PRIBBLE, Defendant–Appellant.**

**No. 17125.**

Court of Appeals of New Mexico.

June 2, 1997.

Bill Chappell, Jr., Frances C. Bassett, Chappell & Barlow, P.A., Albuquerque, for Plaintiff–Appellee.

Paul S. Wainwright, Paul S. Wainwright, P.A., Albuquerque, for Defendant–Appellant.

*OPINION*

ARMIJO, Judge.

1. Defendant (Pribble) appeals a judgment of foreclosure entered against him. On appeal, Pribble raises three issues: (1) whether the trial court improperly granted Plaintiff's (Las Campanas') motion to strike Pribble's request for a jury trial on his counterclaim alleging a violation of federal law; (2) whether the trial court erred in finding that Las Campanas' violation of the federal law was a technical violation that did not warrant rescission of Pribble's real estate contract with Las Campanas; and (3) wheth-er the trial court erred in awarding Las Campanas' requested costs. For the reasons that follow, we affirm.

## I. FACTUAL BACKGROUND

2. Pribble entered into an agreement in 1992 to purchase Lot 55 from Las Campanas, the owner of a real estate development in Santa Fe County, New Mexico. As part of this transaction, Pribble acknowledged receipt of a property report prepared by Las Campanas regarding the development in which Lot 55 was located. Pribble later used his equity in Lot 55 as partial payment for Lot 333, which Pribble agreed to purchase from Las Campanas in June of 1993. As part of this second transaction, an employee of Las Campanas mailed a package of documents to Pribble on June 7, 1993.

3. According to the cover letter accompanying this packet, the package contained the following enclosures: a purchase agreement, a trade addendum, two identical documents entitled "Receipt, Agent Certification and Cancellation Page"; a disclosure and disclaimer of committed facilities; a buyer's settlement statement; a certificate of inspection; a special warranty deed to reconvey Lot 55 back to Las Campanas; a disclosure statement; a promissory note; a mortgage; account servicing instructions; a list of covenants, conditions, restrictions and easements for the development in which Lot 333 was located; a supplemental declaration regarding this development; a commitment for title insurance; a property report; and a set of instructions for wiring the closing funds.

4. The property report was forty-four pages in length and had the following words printed on its cover in large red letters: "READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING." The "Receipt, Agent Certification and Cancellation Page," on which Pribble was to acknowledge receipt of the property report, was not physically attached to the property report. Before mailing the package, an employee of Las Campanas had written "June 1, 1993" in the space for the date that accompanies the signature block on the receipt for the property report. The trial court found that the receipt for the property report was signed by

Pribble on June 15, 1993. The trial court also found that Pribble signed a promissory note and a mortgage for Lot 333 on that same date.

5. Pribble failed to make the payments required under the promissory note. After Las Campanas gave Pribble three written notices of default and Pribble failed to cure the default, Las Campanas initiated a foreclosure suit in district court. Pribble responded by filing an answer, a counterclaim, and a demand for a jury trial. Las Campanas filed a motion to strike Pribble's jury demand, which the trial court granted. The matter was tried to the bench; the trial court denied the counterclaim and entered its findings and conclusions followed by a judgment of foreclosure. This appeal followed.

## II. DISCUSSION

### A. *Right to a Jury Trial*

6. Pribble asserts that the trial court erred in granting Las Campanas' motion to strike his jury demand. Pribble's counterclaim and some of his affirmative defenses asserted that Las Campanas violated the Interstate Land Sales Full Disclosure Act (ILSFDA). 15 U.S.C. §§ 1701–1720 (1994). In his counterclaim, Pribble asserted his entitlement to rescind the contract and specifically plead: "The Defendant [Pribble] hereby *elects* to cancel the Promissory Note and Mortgage pursuant to Federal law." (Emphasis added.) Under ILSFDA, an aggrieved party may either rescind the contract *or* recover damages, but may not do both. *See* 15 U.S.C. §§ 1703, 1709; *Gaudet v. Woodlake Dev. Co.*, 413 F.Supp. 486, 490 (E.D.La.1976). While Pribble's counterclaim alludes to other remedies that may be incidental to the enforcement of a right of revocation under Section 1703, including interest, costs and attorney fees under Section 1709(c), he did not specifically plead any damages. Therefore, we conclude that Pribble sought only rescission of the contract.

7. Because Pribble sought to have the court use its equitable powers to cancel his obligations under the promissory note and mortgage, we conclude that the type of relief Pribble sought in his counterclaim was equi-

table. *See* 15 U.S.C. § 1709(b) (allowing purchaser to bring an action in equity against seller to enforce purchaser's right of revocation under Section 1703); 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.3(6), at 616 (2d ed. 1993) ("[A] rescission that requires, for effective restitution, a cancellation or amendment of any document, normally is effected in equity courts.").

8. Because Pribble's counterclaim sought equitable rescission, we conclude that Pribble does not have a right to a jury trial on this counterclaim under ILSFDA or the New Mexico Constitution. The scope of Pribble's constitutional right to a jury trial in state court is governed by Article II, Section 12 of the New Mexico Constitution. *See Scott v. Woods*, 105 N.M. 177, 182, 730 P.2d 480, 485 (Ct.App.1986) (Seventh Amendment does not control right to jury trial in state courts); *Vivian v. Atchison, Topeka & Santa Fe Ry. Co.*, 69 N.M. 6, 9, 363 P.2d 620, 622 (1961) (same). We define the scope of a party's constitutional right to a jury trial in a civil case in state court by determining whether such a right existed either at common law or by statute at the time our New Mexico Constitution was adopted. *See Board of Educ. v. Harrell*, 118 N.M. 470, 481, 882 P.2d 511, 522 (1994). New Mexico courts have held that there is no right to a jury trial in a suit for equitable rescission. *See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 10 n. 2, 820 P.2d 1323, 1324 n. 2 (1991) (rescission of a contract is an equitable remedy that is tried to the court without a jury); *Ledbetter v. Webb*, 103 N.M. 597, 601, 711 P.2d 874, 878 (1985) (rescission is an equitable remedy). Pribble has provided us with no authority suggesting that there was any contrary practice prior to statehood in 1912. Therefore, we conclude that Pribble has no constitutional right to a jury trial in the present case.

9. This conclusion finds further support in the fact that Pribble's suit for equitable rescission arose as a counterclaim in a foreclosure action. Foreclosure suits are equitable in nature, *see* 1 Dobbs, *supra* § 2.6(3), at 162–63, and New Mexico courts have not recognized a constitutional right to a jury trial on issues that are necessarily decided in

the course of a foreclosure suit in state court such as the existence or the amount of the debt. *See Sunwest Bank v. Garrett,* 113 N.M. 112, 115–16, 823 P.2d 912, 915–16 (1992); *State ex rel. McAdams v. District Court,* 105 N.M. 95, 96–97, 728 P.2d 1364, 1365–66 (1986). Pribble's claim that he was entitled to rescind the promissory note and mortgage under federal law was necessarily decided as part of Las Campanas' foreclosure action since Las Campanas could not foreclose on a mortgage and promissory note that were invalid. Similarly, any affirmative defense asserted would necessarily be decided in the course of the foreclosure action.

10. We do not rule out the possibility that some federal statutes may create a statutory right to a jury trial regarding certain types of counterclaims even when there is no constitutional right to a jury trial on such counterclaims. However, ILSFDA is silent on a purchaser's right to a jury trial, and we find no authority to support the proposition that ILSFDA implicitly grants a purchaser a statutory right to a jury trial when that purchaser brings a suit for equitable rescission in state court. In cases where other types of equitable relief are sought by the government under ILSFDA, or where equitable rescission is sought under federal securities laws that are analogous to ILSFDA, federal courts have reached the conclusion that there is no right to a jury trial. *See Pierce v. Moore,* 654 F.Supp. 401, 402 (W.D.Tex.1987) (no right to jury trial in suit for injunctive and restitutory relief brought by federal government under ILSFDA); *Kamen v. Kemper Fin. Servs.,* 908 F.2d 1338, 1350–51 (7th Cir. 1990) (interpreting Investment Company Act, 15 U.S.C. § 80a–35(b) (1988)), *rev'd in part on other grounds,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *cf. Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990) (noting analogy between ILSFDA and federal securities laws). Thus, we conclude that neither ILSFDA nor the New Mexico Constitution grant Pribble a right to a jury trial on his counterclaim for equitable rescission in state court.

**B.** *Right to Rescind the Promissory Note and Mortgage*

11. The trial court, as fact finder, determined that Las Campanas mailed Pribble a packet of documents, including the property report and two documents titled, "Receipt, Agent Certification and Cancellation Page." It also determined that Pribble received these documents before he executed the promissory note on June 15, 1993. The trial court further found that Las Campanas did not provide the property report in such a manner as to conceal it and did not engage in any misleading practice, device, or representation in its dealings with Pribble. The trial court did find that Las Campanas had technically violated a federal regulation implementing ILSFDA, 24 C.F.R. Section 1710.118(b) (1995), by failing to physically attach the receipt page to the property report when it was delivered, but that Las Campanas had substantially complied with the intent of the regulation. These findings are supported by the facts noted above. *See Sheraden v. Black,* 107 N.M. 76, 78, 752 P.2d 791, 793 (Ct.App.1988) (standard for reviewing sufficiency of the evidence).

12. ILSFDA and its implementing regulations provide for rescission of a contract only under certain, specific circumstances such as failing to provide a property report prior to executing a contract. *See* 15 U.S.C. §§ 1703, 1709; 24 C.F.R. § 1715 (1995). These circumstances are not present in this case. We are not persuaded that ILSFDA or its implementing regulations entitle Pribble to rescind the contract solely because of Las Campanas' failure to comply with the regulation's technical requirement of physically attaching the receipt to the property report or because of discrepancies in the dates of the documents.

13. An employee of Las Campanas and an escrow officer from the title insurance company testified regarding discrepancies in the dates on the documents. These witnesses explained that the receipt was dated so that it would match the date on the purchase agreement, and the purchase agreement had to be prepared by the seller before the title company could begin its preparation of other documents involved in the transaction with Pribble. The trial court found this testimony to be credible and rejected Prib-

ble's explanation. *See Newcum v. Lawson,* 101 N.M. 448, 455, 684 P.2d 534, 541 (Ct.App. 1984) (trial court is not bound to accept defendant's version of the facts). Therefore, we affirm the trial court's finding that the discrepancies in the dates of the documents did not amount to an effort to conceal the property report or to engage in any misleading practice, device, or representation. The discrepancies in the dates did not violate 15 U.S.C. Section 1703 or 24 C.F.R. Section 1715.20.

14. Regarding Pribble's assertion that Las Campanas' failure to physically attach the receipt to the property report entitles him to rescission of the contract, we find that the cases on which Pribble relies are distinguishable because those cases appear to have involved violations that ILSFDA expressly identifies as grounds for rescission. *See, e.g., Law v. Royal Palm Beach Colony,* 578 F.2d 98, 100 (5th Cir.1978) (plain language of Section 1703 provided for rescission where seller failed to provide property report prior to purchasers' execution of contract); *Johnson v. Stephens Dev. Corp.,* 538 F.2d 664, 665–66 (5th Cir.1976) (developer did not file documents required by Section 1704); *Rockefeller v. High Sky, Inc.,* 394 F.Supp. 303, 305–06 (E.D.Pa.1975) (seller had not filed a statement of record or furnished a written property report expressly required by Section 1703). In this case, Pribble relies on the trial court's finding that Las Campanas technically violated a requirement in a regulation that does not expressly provide grounds for rescission under ILSFDA. *See* 24 C.F.R. § 1710.118(b).

15. We acknowledge that a statute with a remedial purpose must be construed liberally to implement that purpose, and any exception will be strictly construed. *See Kaiser v. DeCarrera,* 122 N.M. 221, 223, 923 P.2d 588, 590 (1996). In accordance with this principle, even a technical violation of an administrative regulation that implements a remedial statute may warrant relief where such a violation effectively frustrates an important public policy behind the statute. *See id.* at 225, 923 P.2d at 592. However, we do not find that Las Campanas' failure to physically attach the receipt page to the property report frustrated the public policy behind ILSFDA in this case.

16. ILSFDA " 'is an antifraud statute utilizing disclosure as its primary tool, much like the securities laws.' " *Markowitz,* 906 F.2d at 103 (quoting *Winter v. Hollingsworth Properties,* 777 F.2d 1444, 1447 (11th Cir. 1985)). "The underlying purpose of [ILSFDA] is to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property." *Royal Palm Beach Colony,* 578 F.2d at 99. Thus, ILSFDA serves to provide and promote full disclosure and to prohibit and punish fraud. *Pierce v. Apple Valley, Inc.,* 597 F.Supp. 1480, 1484 (S.D.Ohio 1984). To fulfill this purpose, ILSFDA grants to the United States Department of Housing and Urban Development (HUD) the authority to require developers to provide additional information with their property reports. *See* 15 U.S.C. § 1707(a).

17. In the present case, the trial court found that Pribble received the property report before he signed any contract or purchase agreement, and that Las Campanas did not act to conceal the property report or engage in any misleading practice, device, or representation in its dealings with Pribble. While the receipt page that Las Campanas provided was not physically attached to the property report, both documents were contained in the same package, and the cover of the property report contained a warning in large red letters, instructing Pribble to "READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING." Under these circumstances, we conclude that the trial court's decision not to order rescission of Pribble's contract with Las Campanas does not frustrate the purpose of ILSFDA.

18. Because Las Campanas' technical violation of 24 C.F.R. Section 1710.118(b) did not provide grounds for rescission under the circumstances of this case, and Pribble failed to establish any other basis for his counterclaim, we affirm the trial court's decision not to rescind the contract or cancel Pribble's obligations under the promissory note and mortgage.

### C. *Award of Costs*

■ 19. Las Campanas submitted a cost bill including costs for facsimile, copying, telephone, postage, courier charges, travel expenses, filing fees, title report fees, computer-assisted research fees, court reporting fees, and a University of New Mexico Law Library cost. Pribble objected generally to all of these costs. At the hearing on objections to the cost bill, the trial court offered to allow Pribble additional time to submit specific objections, which Pribble declined to do, stating that he was willing to leave the matter to the discretion of the trial court. On appeal, Pribble argues that the trial court failed to exercise any discretion by awarding all the costs requested. Because Pribble failed to object specifically to any of the costs awarded, we determine Pribble failed to preserve his objection. *See, e.g., Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987).

20. Nevertheless, we note that, in an opinion that was filed eight months after the costs were awarded in this case, this Court determined travel expenses are not taxable as costs. *See Lopez v. American Airlines, Inc.,* 122 N.M. 302, 305, 923 P.2d 1187, 1190 (Ct.App.1996). The amount of costs based on travel expenses in the present case was $39.65 out of total costs amounting to more than $1100. Because Pribble failed to make a specific objection to these costs, however, we affirm this issue.

### III. CONCLUSION

21. For the foregoing reasons, the judgment of the trial court is affirmed.

22. **IT IS SO ORDERED.**

BOSSON, J., concurs.

HARTZ, C.J., specially concurs.

HARTZ, Chief Judge, specially concurring.

(23) I join in all of Judge Armijo's opinion for the Court except paragraph 9. The discussion in that paragraph is not necessary to our decision. I would leave the matter for another day.